No. 88.—Edwin R. Warthen, plaintiff in error, *vs.* Edmund May, defendant in error.

*The Statute of* 24 *Geo.* 2, c. 44, sec. 1, is of force in the State of Georgia.

For the facts of the case and the errors assigned, the reader is referred to the decision of the Supreme Court.

Iverson L. Harris, for the plaintiff in error.

The sole question presented by the bill of exceptions is, whether *the Statute* 24 *George* 2, ch. 44, relative to suits against Justices of the Peace, is of force in Georgia?

It is respectfully urged that it is not of force. The colony of Georgia was settled in 1732, and the statute of George was enacted 19 years afterwards. It was enacted by the British Parliament, before the Proprietary government allowed by the charter had become extinct. That charter conferred the right on the corporation to make such laws, &c., as they might deem necessary and convenient, &c., for the space of 21 years from the 9th day of June, 1732, subject, however, to be bound to obey such laws, orders, statutes, &c., as should, from time to time, be made, ordered and enacted for the better government of the Province of Georgia. The Proprietary government ceased in 1752, and Georgia became a Royal Government with a Provincial Assembly.

Had the statute of 24 *George* 2 been in existence, when the colony was planted by Oglethorpe, it perhaps with plausibility might be argued that it fell within the reason of the declaration made by Judge Parsons in 2 *Mass. Rep.* 534, " That our ancestors when they came to the new world claimed the common law as their birth-right, and brought it with them, except such parts as were judged inapplicable to their new state and condition. The common law thus claimed, was the common law of their native country, as it was amended or altered by English statutes in force at the time of their emigration."

Passed afterwards, and in derogation of the right conferred on the colony to make such laws as suited its condition expressly conferred by its charter, it seems to me that for this reason it is not of force.

Moreover, it is a well-established principle in reference to the effect of a statute passed by Parliament, that after a colony is planted, no statute will operate over it unless expressly *named.*—1 *Blackstone's Com.* 77, *edited by Chitty.*

It is said by a late commentator : " Though it is competent to Parliament to

legislate for the colonies, yet a colony is not considered as affected by acts of Parliament passed after its acquisition, and while it is subject to other legislative authority, (whether that of the sovereign in council, or of a local council assembly,) unless it be mentioned in the act by name, or by description, such as the "colonies," or "the West Indies," or unless the act be in its nature obviously intended to affect all our possessions.—1 *Stephen's Com.* 100; *Blankard* vs. *Galdy,* 4 *Mod.* 225; 2 *Peere Wms.* 75; *Rex* vs. *Vaughan,* 4 *Burr.* 2434; 1 *Chitty's Com. Law,* 638.

There are no words in the statute by which it can be made to extend to the colony of Georgia.

The decision in the case of *Upshaw,* (*Dudley,* 241,) pronouncing this statute of force, appears to me to beg the question. It furnishes no reason—it cites no adjudication—it exhibits no legislative recognition. Can such a decision be of controlling authority upon this tribunal?

The adopting statute of 1784 (*Prin. Dig.* 570) will not cover with its broad wings the act under examination. The statute of 1784 adopted, 1st, such of the acts of its own *Provincial Assembly* as were not contrary to the constitution, laws, and form of government; 2d, the common law of England; and 3d, such of the statute laws as were USUALLY of force in Georgia, up to the 14th May, 1776.

If within the third division it should be attempted to be included, and under neither of the other divisions can it be embraced, I ask the evidence of the statute (24 *George* 2) being *usually* of force—indeed of its *ever having been in force at all within the period from* 1732 *up to* 14*th May,* 1776.

Neither a judicial nor legislative recognition within that period can be shown; and unless it can be, it is not of efficacy in Georgia, by virtue of the adopting act of 1784.

The isolated decision in *Dudley* cannot make that statute law—it is without principle or precedent to sustain it; and such a precedent, it is to be hoped, will not in any case be considered as obligatory upon this court.

C. O. McCONNELL, for the defendant in error, insisted :

1st. Justices of the Peace are entitled to notice that an action will be commenced at least one calendar month before the bringing of suit.—24 *Geo.* 2, ch. 44, sec. 1; 2 *Saund. on Pl. and Ev.* 615; 2 *Chit. Rep.* 396; 1 *B. and C.* 11.

2d. Declaration must aver notice, when this action does not lie without such notice.—6 *Com. Dig.* 83; *Gould's Pl.* 176.

3d. Action must be commenced within six calendar months after the injury upon which the suit is founded was committed.—24 *Geo.* 2, ch. 44, sec. 8; 2 *Saunders on Pl. and Ev.* 616.

The charter of the Province of Georgia was granted fifth year of George II., A. D. 1732.—*Schley's Dig.* 429.

The statute and common law of England, so far as accommodated to our circumstances, were of force as soon as the State was settled by General Oglethorpe in 1733.—1 *Black. Com.* 109.

All statutes passed in Great Britain subsequent to the settlement of Georgia, (1733,) if applicable to our circumstances, were of force here, previous to the Declaration of our Independence in 1776, (*Prin. Dig.* 570,) (adopting act of 1784,) consequently are now.

The statute of 24 *Geo.* 2, was applicable to our circumstances, and continues to be so to the present day. This statute was framed in 1751, twenty-five years before the Declaration of Independence, and eighteen years after the settlement of the province. (Charter granted in 1732.)—*Schley's Dig.* 429.

Acts enumerated in *Schley's Dig.* as in force, passed since 1733—11 *Geo.* 2, A. D. 1738; *ib.* 374; 24 *Geo.* 2, 1751; *ib.* 380; 25 *Geo.* 2, A. D. 1752; *ib.* 384.

To determine what statutes are in force depends upon opinion and reason, (*Preface to Schley's Dig.* 26, 27); and from the reason and necessity of the case,

this statute must have been in force previous to the adopting act of 1784, and since that time.

The only record we have is a decision by the Convention of the Judges of this State, when it was decided that this statute was in force and had been for more than thirty years.—*Leroy Upshaw* vs. *James Oliver, et al. Dudley's (Geo.) Rep.* 241.

*By the Court*—LUMPKIN, Judge.

This was an action of trespass, *vi et armis*, brought by the plaintiff in error against the defendant, in the Superior court of Washington county. The cause stood for trial on the appeal, before Judge Gamble, at September Term, 1846.

Edmund May was a justice of the peace, and the complaint alleged against him was, that he had issued an attachment against the property of the plaintiff illegally ; the same having been made returnable to the Justice's Court; notwithstanding the sum sworn to was *ninety dollars*—an amount exceeding the magistrate's jurisdiction, which is limited to *thirty dollars*. It was charged in the writ that the property of Warthen had been seized and sold under this process. It was nowhere averred in the declaration, that notice had been given to the defendant previous to the commencement of the suit.

A demurrer was filed to the action and sustained by the court below, on the ground that one month's notice of the suit should have been given under the act of 24 *George* 2.

To this decision of the Circuit Judge plaintiff's counsel excepted, and the single question submitted for our adjudication is, whether the act of 24 *George* 2, ch. 44, sec. 1, is of force in the State of Georgia ?

It is contended, on the authority of Blackstone and the elementary writers, that, inasmuch as this statute was passed in 1751—nineteen years after the settlement of Georgia by Gen. Oglethorpe—it cannot be made to extend to the colony unless expressly named therein. And we recognize this as a sound rule of interpretation. It is not pretended that an act of the British Parliament *merely* would bind the provinces. Some have supposed, however, that even where the colonies were not expressly mentioned, yet if from the whole purview of the statute it manifestly appears to have been the intention to include them, such ought to be the construction.

Again : it is urged that this act is not embodied in *Schley's Digest of English Statutes*, of force in this State. I am not aware that the validity of *any* act contained in that valuable compilation has been called in question by our courts. The converse of this proposition, however, is not here. Many statutes, and this among them, have been declared to constitute a part of our law, although omitted in that work. Nor is it easy to perceive why the acts of 11 *George* 2, for the more effectual securing the payment of rents and prosecuting frauds by tenants, and that of 24 *George* 2, ch. 45, for the apprehension of persons in any county, under warrants granted by justices in any other county ; should be retained, and that under review rejected. The learned and laborious author, in his preface, puts the adoption of the two former upon the fact that they have been in constant use ever since the 14th May, 1776. As the record of our judicial decisions does not

extend back to that period, we are unable to form any opinion upon this averment. We have, however, the testimony of the whole bench of the State, that the act of 24 *George* 2, has been in force in Georgia since about the beginning of the present century.—*Upshaw* vs. *Oliver et al., Dudley's Rep.* 241.

By our adopting statute, passed in 1784, we have incorporated into our code the acts of the provincial Legislature, which were binding on the inhabitants of the colony in May, 1776 ; and the common laws of England and such of the statute laws as were usually in force at the commencement of the revolution ; so far as they are not contrary to the constitution, our laws and form of government. To say what portion of the common or statute laws of England were usually in force in this State at the date designated, is wholly impracticable. Actual usage is the only evidence of adoption in many cases. Hence the importance of the statement in Dudley, that the act of 24 *George* 2 had been recognized in practice from an early period.

Judge Crawford, *clarum et venerabile nomen,* who delivered the opinion of the convention in the case cited, was a practitioner of law shortly after the passage of our adopting statute, and, consequently, his *evidence* as well as his judgment sustaining this act are highly important.

The rule of construction respecting British statutes I apprehend to be this : whenever the principles upon which they are founded are foreign to our state of society—the manners and customs of our people —they do not extend to the colonies, though passed prior to their emigration and settlement. And, on the other hand, whenever, from their subject-matter and provisions, they were suited to our situation and circumstances, they have been practically adopted by our courts, although enacted since the settlement of the colonies.—*Palmer et eux* vs. *Downer,* 2 *Mass. Rep.* 179 *n. ; Londonderry* vs. *Chester,* 2 *New Hamp. Rep.* 268.

Indeed, it will be found by reference to the decisions of the courts in our sister States, that they have assumed to discriminate between the different portions of the same statute ; adopting some of the provisions, and rejecting others.

Admitting, then, that there was no particular fact known to the court, from which the adoption of this statute might be inferred, is there anything in it repugnant to our institutions ? On the contrary, is not its operation here as salutary as in the mother country ? It is at best a stringent rule which subjects *judicial* officers to suit, not for corruption, but an error in judgment *only.* Is it not a most reasonable requisition that the party aggrieved should give one month's notice of his intention to sue, to enable the justice to make amends for the alleged injury, and thus relieve himself from the payment of costs ?

This question vitally affects some eight hundred magistrates in the State ; and seeing no good reason why they should be deprived of the protection of this most wholesome act, we take pleasure in affirming the judgment of the court below.